Arnett *et al. v.* Arnett.

HANNAH ARNETT, and NANCY J. SANDERS, Plaintiffs in Error, *v.* WILLIAM B. ARNETT, Defendant in Error.

ERROR TO CLINTON.

It is indispensable to the validity of a nuncupative will, that the testator should request those present to bear witness that such was his last will. Or that he should say or do something equivalent to such an expression.

THIS was a bill by William B. Arnett, to set aside an alleged nuncupative will of Nathan Arnett, filed in the Circuit Court of Clinton county.

Hannah Arnett and Nancy J. Sanders answered, alleging validity of will.

Trial by the court on feigned issue at law informally submitted.

The evidence consisted solely of two certified copies of the record, and proof of said alleged will in the County Court of Clinton county, which evidence is set out in the opinion of the Court.

The court found for complainant, and overruled motion for new trial, to which exception was taken at the time.

JOHN BAKER, for Plaintiffs in Error.

H. K. S. O'MELVENY, for Defendant in Error.

CATON, C. J.   We are now called upon, for the first time, to say how far the literal provisions of the statute must be complied with, in the attestation and proof of a nuncupative will.   And we appreciate it as a question of very considerable importance, demanding our most cautious consideration.   There is no dispute about the facts, for it is agreed by the parties that the record of the probate of the will, constitutes the entire proof in the case; and the only question is, whether the facts thus stated constitute a valid nuncupative will.   This is the record and all the proof there is of the will, or its attestation; except that it was shown by legal testimony to have been reduced to writing within the time required by the statute:

" Be it known, that we, the undersigned, were present on the 22nd day of April, 1856, at the residence of Nathan Arnett, now deceased, in Clinton county, Illinois, then in his last sickness.   The attending physician, Dr. A. R. Stickney, informed the said Arnett that if he had any disposition to make of his worldly affairs, it would be proper to do so.

" That the said Arnett said: ' I desire my personal property to be divided equally between my wife's sister, Aunt Hannah, and the two girls now living in my family.   I desire my real estate to be left to Nancy Jane, a girl I have raised in my family, from the time she was two weeks old.'

" We declare that we were present and heard the above words spoken by the said Nathan Arnett during his last sickness, and that at the time of pronouncing the same, we believe him to be of sound mind and memory; and that the said Arnett departed this life on the 23rd day of April, A. D. 1856.

THOS. E. DAVIS,
SHERROD WILLIAMS."

The ninth section of our statute of wills provides: " a nun-cupative will shall be good and available in law, for the conveyance of personal property thereby bequeathed, if committed to writing within twenty days and proven before the court of probate, by two or more credible, disinterested witnesses, who were present at the speaking and publishing thereof, who shall declare on oath or affirmation, that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory ; and that he or she did, at the same time, desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect."

While we should not be inclined to require an exact con-formity to the literal requirement of this statute, in the publi-cation of a nuncupative will, yet we are not authorized or in-clined to dispense with a substantial compliance with all its provisions. It is not to be denied, that to allow oral testa-ments to be established in any case, is opening a door to frauds and impositions, which have sometimes, in spite of all legislative safeguards, been practiced. Yet, from the extreme necessity of the case, they have attained a firm foothold in our jurisprudence, and they must be treated by the courts with fairness and justice, with a view to give effect to the de-signs of the testator, when the will is pronounced and at-tested in conformity to the provisions of the law. But that law must be at least substantially complied with, or it is no will. In this case every requirement of the law was complied with, except the last member of the sentence quoted. That requires that the testator shall, at the time of pronouncing the words of the will, request some of the persons present to bear witness that such was his will, or words to that effect. It is not enough that the words of the will alone should be spoken in the presence of those who might bear witness to it, but the testator must also use some words indicating his de-sire or wish that those present, or some of them, should bear witness that such was his will. We will not now say that signs and gestures might not be so distinct and intelligible as to sufficiently indicate the desire of the testator, that he wished those present to bear witness to the will, as to amount, sub-stantially, to words of that import, but it would have to be a very marked and unequivocal case to dispense with words actually pronounced, to the effect of those mentioned in the statute. But here we find nothing to satisfy this last clause quoted. No word was spoken, no sign made, no indication manifested, that the testator desired any one present to bear witness of his declared wishes. There is nothing to show

17

that he ever expected or wished that any one present should remember what he had said, or should ever repeat those declarations, or should ever go before any tribunal to prove that such was his will. If we say that such must have been his desire, from the nature of things, that is but conjecture at last, and the legislature has declared that such conjecture shall not be sufficient. Understanding the operations of the human mind as well as any of us, the legislature knew that most probably any one who should, when *in extremis,* declare to those about him the disposition he wished made of his property, would also desire that those present would remember and bear witness to his wish, and to contribute what aid they might to carry out such wish. Such an inference must necessarily arise in almost every case where a will is declared by a dying man to those around him, but the law-makers thought it unsafe to rely upon such inference, however strong, and saw fit to require a direct expression of such wish by the testator at the time of pronouncing the words of the will. And yet, in the face of this express provision of the statute, we are asked to establish this will, upon mere inference, for there was not one word, sign or look, expressing the wish that those present should bear witness to the will. It may be and probably is true, that he did not know it was necessary to the validity of his will that he should call upon those present to witness it, but that cannot alter the law. The statute requires that a written will shall be attested by two witnesses, yet it would shock every lawyer to decide that one witness would do, because the testator supposed that was sufficient. In most cases, our convictions would be as strong that the will expresses the true wishes of the testator when witnessed and proved by one unimpeachable witness, as if witnessed by two, and yet it is not his will, because the law so declares. So here. The law required an additional formality to make this a nuncupative will, without which it should not have been admitted to probate, and for the want of which, it was the duty of the Circuit Court to set it aside and declare it void.

*Judgment affirmed.*