## OCTOBER TERM, 1869.

IN THE MATTER OF THE PROBATE OF THE WILL OF CHRISTOPHER HEBDEN, deceased.

1. A will drawn by an attorney, a few hours before the testator's death, pursuant to his instructions, but its execution postponed till he should feel stronger, though he asserted that his will was as it had been drawn, will not be admitted to probate as a nuncupative will.

2. It is essential to a nuncupative will that it be only a *verbal* declaration of the testator's wishes made in the presence of witnesses called upon by him to bear witness that such is his will.

The contest in this case is as to the validity of a will offered to be proved as the nuncupative will of the deceased. Citations were issued to the next of kin, who appeared by their proctor, and depositions were regularly taken to support the will. The argument was had upon these depositions.

*Mr. Stone,* in support of the will.

*Mr. T. Runyon,* for contestants.

2 R *

THE ORDINARY.

Christopher Hebden died on the 16th of July, 1866, in the city of Newark, at a house where he had been residing for sixteen weeks; he was over seventy years of age, and had personal property of more than $10,000 in value. He sent on that day for some one to draw his will. In compliance with this message an attorney came about eleven o'clock, and at his request took instructions from him for writing his will; these instructions were written down, and from them the attorney drew a will complete in its disposition, except the christian name of Mrs. Stephens, one of the three residuary legatees, but without any date or testandum clause, and without any attestation clause. This he read to the testator in presence of two other witnesses, and the testator said that was the way he wished his property to go. He had then become weary, and desired to leave the matter until Mrs. Stephens' name could be ascertained, and until he should feel somewhat stronger, and was unwilling to sign the will at that time. The attorney went away with the understanding that he was shortly to return, and finish the will and have it executed. He returned in about two hours, and the testator was dead.

The attorney afterwards reduced to writing the particulars of the transaction in these words.

" We do hereby certify that, being in the room with Christopher Hebden, formerly of Clinton township, Essex county, New Jersey, in Coe's place, rear of 57 Court street, in the city of Newark, in said county and state, on Monday, the 16th day of July, 1866, the said Christopher Hebden, then being of sound mind and memory, did, in our hearing, say to John P. Jackson, junior, lawyer of Newark aforesaid, who was directed by the said Christopher Hebden to prepare his will, that his will was in manner following." Then reciting a copy of the draft prepared, and read to the testator, it continues: " We do also certify that we were present at the time of the making of the declaration aforesaid by the said Christopher Hebden, and that the same was made

by him a few hours before his death in the house of Daniel Smith, in Coe's place aforesaid. In witness whereof we have hereunto set our hands this 20th day of July, 1866." This was signed by the three persons present on the day of its date.

There was no evidence either in this paper or the proofs that he had bid the persons present, or any of them, to bear witness that that was his will, or that he used any words to that effect. The only proof was that he gave directions to the attorney to draw a will to that effect.

The statute of 1851, concerning wills, directs that all wills shall be in writing and signed by the testator in the presence of two witnesses, but provides that this shall not affect the existing law relating to nuncupative wills. That law was the statute concerning wills passed in 1846, and which re-enacted almost literally the provisions relative to nuncupative wills contained in the statute of frauds. 29 *Car.* 2, *ch.* 3. These provide that no nuncupative will shall be good, unless the testator at the time of pronouncing the same did bid the persons present, or some of them, bear witness that such was his or her will, or words to that effect.

The objections made by the next of kin to the probate of this will are two: The first, that the testator did not make or intend to make a nuncupative will, but only to give instructions for drawing a written will to be executed at a future time. The second, that one of the essential requirements of the statute was not complied with, as he did not call on any one to bear witness that this was his will, or use any words to that effect.

The term "nuncupative will," as used in their statute of frauds, has always been held, by the English courts, to mean a will not committed to writing by the direction of the testator; one whose efficacy depended upon its being declared verbally by him to be his will. Directions or instructions for wills reduced to writing by the testator, or by some other person by his direction, have never been considered as nuncupative or oral wills, but have uniformly been treated and proved as written wills. Wills of personal estate were not

In re will of Christopher Hebden.

required to be signed or attested in England until 1838, by the statute of wills of 1 *Vict.*, or in this state until the act of 1851, or rather until the act of 1850, for which that was substituted. The provisions of the statute of frauds, relating to nuncupative wills, which had been in force for more than one hundred and fifty years, did not prevent admitting to probate actual testamentary dispositions, which had been committed to writing by authority of the testator, with intention to execute, if left unsigned by accident, or the act of God.

The judgment of Sir John Nichols, in *Huntingdon* v. *Huntingdon*, 2 *Phil.* 213, shows that this was the established doctrine of the ecclesiastical courts. In 1686, shortly after the statute of frauds, the English Court of Chancery, in *Strish* v. *Pelham*, 2 *Vern.* 647, held that the instructions of Strish, committed to writing by the person to whom he gave them, constituted a good will, and none of the requirements for a nuncupative will were shown. This is referred to by Chancellor Walworth, in his opinion in *The Public Administrator* v. *Watts and Leroy*, 1 *Paige* 373. And in that case, in the Court of Errors, 4 *Wend.* 168, the will of John G. Leake, found in his safe unsigned, though with a testandum clause, showing that it was designed for formal execution, was admitted to probate, because written out by himself, though not published, as required for a nuncupative will.

A nuncupative will is defined by Perkins, § 476, to be "when a man lieth languishing, for fear of sudden death, dareth not to stay the writing of his testament, and therefore he prayeth his curate and others to bear witness of his last will, and declareth by word what his last will is." In 7 *Bac. Abr.* 305, *Wills D*, the same definition is adopted. It is approved by Chancellor Kent, in *Prince* v. *Haselton*, 20 *Johns. R.* 502.

If these authorities are correct, and they are supported by the literal meaning of the word, a nuncupative will can only be a verbal declaration, made in presence of witnesses called

on to notice it, and not reduced to writing by direction of the testator. He must intend, at the time, that the verbal declaration so declared shall be his will. This is entirely inconsistent with the position contended for, that unexecuted verbal instructions for a will, which are intended to be reduced to writing and signed, may be proved as a nuncupative will. The very essence and substance of the matter is, that the testator shall intend the declaration so made to be his will. And the words of the statute require this construction; they are "at the time of pronouncing the same, bid the persons present." These refer to the publication, or pronouncing the declarations to be his last will and testament. This is a formal adoption of the declaration as his last will, not a postponing it for future execution as the adoption of it.

I am aware that there are cases in several of the states, in which written instructions have been admitted to probate as nuncupative wills. It may be that the statutes of these states require such action, but if they do not, I am not willing to hold that written instructions can constitute a nuncupative will, in face of the statute requiring written wills to be signed, introducing a new rule that declared invalid such instructions, which had before been proved as written, not as nuncupative wills.

The second objection that there was no *rogatio testium*, no asking of any one to bear witness, is, in my opinion, also well taken. The statute of 29 *Car.* 2, *ch.* 3, and our statute of wills, intended to adopt this requisite, which entered into the definition as given by Perkins, and in Bacon's Abridgment. It requires, explicitly, that the testator shall call upon those present to bear witness that such is his will. This is clearly a different act from pronouncing it to be his will. It is distinguished by the very words of the statute. Simply saying, "It is my will," or "I wish thus," is a declaration or pronouncing of what the will is. This the statute declares shall not be sufficient; but that the testator shall go through the form of bidding, or asking those present to witness that it was his will. This is a salutary provision

against fraud that is very efficacious to prevent the talk of a testator not meant to go into effect as a will, from being proved as such. I find no authority or case in England or in this country, for dispensing with this plain requisition of the statute. The English authorities uniformly hold that all the requisitions of the statute must be strictly complied with, and the compliance clearly proved. *Bennett* v. *Jackson*, 2 *Phil.* 190; *Parsons* v. *Miller, Ibid.* 194.

In *Lemann* v. *Bonsall*, 1 *Addams* 389, Sir John Nicholl doubted whether a nuncupation beginning thus: "Listen all of you what I, Elizabeth Jones, do say," was a sufficient compliance with the statute. And calling upon witnesses by the testator himself, was held essential to the validity of a nuncupative will, in *Winn* v. *Bob*, 3 *Leigh* 140; *Brown* v. *Brown*, 2 *Murphy* 350; *Gwin* v. *Wright*, 8 *Humphreys* 639; *Ridley* v. *Coleman*, 1 *Sneed* 616; *Arnett* v. *Arnett*, 27 *Ill.* 247.

On both grounds, I am of opinion that probate of this will must be denied.