## W. C. ANDREWS et al. v. MOLLIE ANDREWS et al.

1. NUNCUPATIVE WILLS.—Our statute (Rev. Code, 1857, p. 433, art. 38; ib. 1871, § 2392) is a substantial re-enactment of the English statute of frauds (29 Charles I, chap. 3, § 19), which provides that no nuncupative will shall be good unless it be proved that the testator, at the time of pronouncing it, did bid the persons present, or some of them, to bear witness that such was his will, or words to that effect. These stringent provisions are supposed to have been induced by the gross fraud attempted in the case of Cole v. Mordaunt, 4 Ves. 196, note.

2. SAME—ROGATIO TESTIUM.—Nuncupative wills, though tolerated, are by no means favorites of the law. Wherefore, not only is the law more strictly construed, but the evidence of the *factum* of a nuncupative will is required to be more strict and stringent, including the testamentary capacity, the *animus testandi* and the *rogatio testium*, than in the case of a written will. Words by the deceased at the time, indicating his wish that those present, or some of them, shall bear witness that such is his will, are indispensable.

3. SAME—CASE AT BAR.—The words sought to be established as a nuncupative will were drawn from the accused by an interrogatory put by an attending physician. In such cases the court must be still more upon its guard against importunity, incapacity, spontaniety and volition. And there being no *rogatio testium* at the time of the nuncupation, the facts proved are insufficient to establish a nuncupative will.

APPEAL from the chancery court of Yazoo county. HOOKER, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Garnett Andrews, R. S. Hudson* and *J. A. P. Campbell,* for appellants,

Contended that, in order to make a nuncupative will valid, there must be established by proof indisputable, the presence of not only the *animus testandi,* but of the *rogatio mentium,* without which every nuncupation is void. The facts that deceased was called upon to make a disposition of his property in contemplation of death, and that, in compliance with such request, he expressed a desire that his property should be disposed of in a certain manner, are not sufficient to constitute a nuncupative will within the meaning of the law. It must clearly appear that he expressed the intention of making

a will, and called upon persons present to witness it in the same manner as if it had been written. Much stricter proof is required of these wills than of written ones. Counsel cited and commented at length on the following authorities: Gibson v. Gibson, Walk. 364; Garner v. Lansford, 12 S. & M. 558; Parkison v. Parkison, ib. 672; Wood v. Ridley, 27 Miss. 119; Burch v. Stovall, ib. 725; Lucas v. Gaff, 33 ib. 627; 12 Barb. 148; 4 Seld. 196; 2 Black. Com. 501; Bennett v. Jackson, 2 Phillim. 191; Parsons v. Miller, ib. 195; Dockum v. Robinson, 6 Fost. (N. H.) 372; Haus v. Palmer, 21 Penn. 296; Yarnell's Will, 4 Rawle, 46; Talby v. Butterworth, 10 Yerg. 501; Gwin v. Wright, 8 Humph. 639; Baker v. Dodson, 4 ib. 342; Dorcey v. Sheppard, 12 Gill & Johns. 192; Brown v. Brown, 2 Murph. 350; Winn v. Bobb, 3 Leigh, 140; Kelly v. Kelly, 9 B. Mon. 553; Sampson v. Browning, 22 Ga. 293; Arnett v. Arnett, 27 Ill. 247; Ridley v. Coleman, 1 Sneed, 616; Welling v. Owen, 9 Gill, 467; Bronson v. Burnett, 1 Chand. (Wis.) 136; Rankin v. Rankin, 9 Ired. 156.

*Miles & Epperson* and *Robert Bowman,* for appellees,
Contended, that the *animus testandi* of the deceased is sufficiently established by proving that the testator did, in point of fact, make a will, and that such was his intention from the facts established there can be no doubt. 1 McCord, 430; 2 Leigh, 249; 1 McCord, 409; 2 Nott & McCord, 531. It is proved that at different times during two years previous to the death of deceased, he had expressed an intention to leave his property in the same manner as intimated in his nuncupative will. A will founded on the conduct and declarations of a party long previous to his death is a material fact to its validity. Hoby v. Hoby, 1 Hagg. 146; 3 Eng. Eccl. 68; Evans v. Knight, 1 Adams, 229.; 2 Eng. Eccl. 95; Cartwright v. Cartwright, 1 Phillim. 90; 1 Eng. Eccl. 51; Booth v. Blundell, 19 Ves. 194;

Brock v. Luckett's Heirs, 4 How. (Miss.) 450; Kelly v. Miller, 39 Miss. 18; Mullins v. Cattrell, 41 Imp. 291.

2. Although Andrews did not in so many words call up the bystanders to witness his will as to the disposition of his property, yet in effect his words were a compliance with the statute, and the will is valid. The attention of those present was invoked by intelligent acts and language, and it is sufficient. Counsel cited and commented on the following authorities: 12 S. & M. 678; 4 Humph. 342; Hubbard v. Hubbard, 12 Barb. 148; 2 Pirt. Dig. 519; Portwood v. Hunter, 7 B. Mon. 538; 2 Greenl. 300. It has never been doubted that a will may be made upon interrogation; and the rule is the same, whether the will be oral or written. In all such cases the courts will guard against the establishment of a fraudulent will procured by importunate interrogations of interested parties. But if the will be free from such suspicion; if it be made upon the interrogations of uninterested persons; if no undue influence has been used; if the interrogation is intelligible, and the answer clear and explicit, such a will is as valid as though written or dictated by the testator. 1 Eng. Eccl. 34, 35; Swinburne, 39, 112, 113; 1 Lomax on Exr's, 101; 12 Gill & Johns. 192; Williams' Exr's. 101; Chilton Prob. Court Law, 56; 12 Barb. 148; 2 Greenl. 300. See also, 1 Lomax on Exr's, 1, 28; Swinburne, 6; Parsons v. Parsons, 2 Greenl. 273; 2 Black. Com. 499, 500; Lucas v. Goff, 33 Miss. 642.

PEYTON, C. J.:

This is an appeal from the decree of the chancery court of Yazoo county, admitting to probate and establishing the nuncupative will of Joseph Andrews, Jr., who, being informed by one of his attending physicians that he was in danger of death, was asked by him

what he intended to do with his property, and in answer thereto stated as follows: "I wish it to go to Mollie and the child and the old man, and Wilkinson and Bowman to take charge of it."

Are these words sufficient to constitute a nuncupative will under our statute, which provides that no nuncupative will shall be established unless it be proved by two witnesses that the testator called on some person present to take notice or bear testimony that such is his will, or words to that effect? Rev. Code 1857, p. 433, art. 38.

The above provision of our statute is substantially a re-enactment of the English statute of frauds upon this subject, as will appear by reference to the 19th section of that statute, which provides that no nuncupative will shall be good unless it be proved that the testator, at the time of pronouncing the same, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect.

The stringent provisions of this statute upon this subject are supposed to have originated from the circumstance of a gross fraud attempted the year before its enactment, in setting up a fictitious nuncupative will. Cole v. Mordaunt, 4 Ves. 196, note.

It seems always to have been regarded as essential to the validity of ordinary nuncupative wills, in the English ecclesiastical courts, that there should have been a distinct calling of the witnesses to take notice of the testator's declarations of a will, and that the testator make the declarations *animo testandi*, with a view to have the very words then uttered by him constitute his will. Bennett v. Jackson, 2 Phillim. 190.

The statute is strictly construed with respect to its requisition that the testator shall bid the persons present, or some of them, to bear witness that such is his will, or to that effect, which is technically called the *rogatio testium*. Thus, where a mother, in her last sick-

ness, called several of her children and the daughter of the person with whom she lodged, to her bedside, and declared her wishes as to the disposition of her effects and the conduct of her family after her death, such declaration was held inadmissible to probate as a nuncupative will on account of the want of the *rogatio testium;* for the words of the statute are very strong, and must be held strictly that the deceased shall call upon the persons present to bear witness to the act. He must declare that the words were spoken with the intention of making a will at the time. 1 Williams on Executors, 105; 1 Lomax on Executors, 37.

Nuncupative wills, though tolerated, are by no means favorites of the law. Not only must all the provisions of the statute be strictly complied with to authorize the probate of such a will, but added to this, and independent of the statute altogether, the *factum* of a nuncupative will requires to be proved by evidence more strict and stringent than that of a written one in every particular. This is requisite in consideration of the facilities with which frauds in setting up nuncupative wills are obviously attended; facilities which absolutely require to be counteracted by courts, insisting on the strictest proofs as to the *facta* of such alleged wills. Hence the testamentary capacity of the deceased, and the *animus testandi* at the time of the alleged nuncupation, must appear, in the case of a nuncupative will, by the clearest and most indisputable evidence, and that the proof embodies the real testamentary intentions of the deceased. 1 Williams on Executors, 105; 1 Redf. on Wills, 188, 189; Yarnell's Will, 4 Rawle, 62; Frick's Will, 4 Watts & Sergt. 360; Werkheiser's Will, ib. 189.

In the case of Haus v. Palmer, 9 Harris, 300, it was held that the substance of the will, the intent to will, the call upon disinterested witnesses to bear witness to it as a will, must each and all appear with great clearness in order to amount to proof.

It was said by the court, in Rankin v. Rankin, 9 Ired. 160, that nuncupative wills were found to give rise to so many frauds and perjuries, that it was necessary to guard them by many requisites in respect to their execution and their probate. To render the protection safe against those wills, the court ought faithfully to observe every one of the provisions of the statute. It is important that the deceased give the requisite evidence that his words were not uttered in loose discourse, but *animo testandi*, by calling on persons present to bear witness to that intention. Brown v. Brown, 2 Murph. 350. And this is the doctrine of the state of Georgia, where it has been determined that no nuncupative will can be good unless it be proved that the testator, at the time of pronouncing the same, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect. Sampson v. Browning, 22 Ga. 293.

The statute of Illinois requires that the deceased, at the time of making his will, shall desire the persons present, or some of them, to bear witness that such was his will, or words to that effect.

In the case of Arnett v. Arnett, 27 Ill. 247, arising under that statute, two witnesses testified that the following words, as a nuncupative will, were reduced to writing within the time required by the statute: "Be it known that we, the undersigned, were present on the 22d day of April, 1856, at the residence of Nathan Arnett, now deceased, in Clinton county, Illinois, then in his last sickness. The attending physician, Dr. A. R. Stickney, informed the said Arnett, that if he had any disposition to make of his worldly affairs it would be proper to do so."

That the said Arnett said: "I desire my personal property to be divided equally between my wife's sister, aunt Hannah, and the two girls now living in my family. I desire my real estate to be left to Nancy Jane, a girl

I have raised in my family from the time that she was two weeks old."

The said witnesses declared that they were present and heard the above words spoken by said Nathan Arnett during his last sickness, and that at the time of pronouncing the same they regarded him to be of sound mind and memory, and that the said Arnett departed this life on the 23d day of April, 1856.

The court say, in this case, that every requirement of the law was complied with, except the last member of the sentence quoted. That requires that the testator shall, at the time of pronouncing the words of the will, request some of the persons present to bear witness that such was his will, or words to that effect. It is not enough that the words of the will alone should be spoken in the presence of those who might bear witness to it, but the testator must also use some words indicating his desire or wish that those present, or some of them, should bear witness that such was his will. But here we find nothing to satisfy this last clause quoted. No word was spoken, no sign made, no indication manifested, that the testator desired any one present to bear witness to his declared wishes. There is nothing to show that he ever expected or wished that any one present should remember what he had said, or should ever repeat those declarations, or should ever go before any tribunal to prove that such was his will. If we say that such must have been his desire, from the nature of things, that is but conjecture at least, and the legislature has declared that such conjecture shall not be sufficient.

In Taylor's Appeal, 47 Penn. St. 31, it was held that in committing to writing a nuncupative will, other facts should be stated in addition to the testamentary words or their substance, such as his request to the bystanders to bear witness that the words used are his will. And this not having been done, the proof was,

therefore, entirely insufficient to authorize their probate as a will.

In the case of Priscilla E. Yarnell, before referred to in 4 Rawle, it was held that to entitle a nuncupative will to probate, the provisions of the law must be strictly complied with, and the absence of due proof of a strict compliance with any one of them is fatal. The *rogatio testium* must be at the time the alleged nuncupative will is made. It is an important part of the nuncupation, and goes far to show the *animus testandi* of the deceased, and for this purpose it was that the act requires that the testator should call on the witnesses to remember that such was his will.

It was held in the state of Tennessee that, if the testator had addressed himself to the witnesses without calling them by name, saying, " I wish to make a disposition of my effects," and then proceeded to make a disposition, it might have be sufficient. Baker v. Dodson, 4 Humph. 343. But in the case of Ridley v. Coleman, 1 Sneed, 616, the deceased made the disposition of her property in the presence of the witnesses without addressing himself to any one or more of them in particular. This was regarded as insufficient. The court say : " If a case like this could stand, the important provisions of the statute, so essential to prevent abuses, would be entirely nugatory, and such a construction would amount to a judicial repeal of the statute.

The object of the statute, as we have seen, was to prevent frauds and perjuries in setting up fictitious nuncupative wills. This object can be effectuated only by a strict adherence to the terms of the law: Any construction of the statute, with a view to make it extend to cases not within the contemplation of the legislature, would open the door to all the evils which its enactment was intended to prevent. It is certainly safest to follow the plain and beaten track. Whenever

courts, by construction, strain a statute beyond its legitimate meaning, with a view to relieve hard cases, they are in danger of making bad law. The statute of limitations furnishes an illustrious instance of this, and of the danger of frittering away statutes by construction, although it be for the laudable purpose of attaining what is supposed to be the ends of justice.

It will be found upon examination that the best considered cases, not only in this state, but elsewhere, show a close adherence to the provisions of the statute. In the case of Garner v. Lansford, 12 S. & M. 561, the court set aside the probate of a nuncupative will, because it did not appear that the decedent called upon any one to take notice that the disposition then made of his property was his will. The court say: "Without such proof the disposition cannot be regarded as valid."

In Woods v. Ridley, 27 Miss. 146, it was held that much greater strictness is required in several respects in the proof of wills of this character, than in the proof of written wills. If the proof fail in establishing a strict compliance with any one of the provisions of the statute, according to the unvarying current of decisions in England and this country, it will be fatal to a case of this description; for example, the *rogatio testium* which is required by the statute.

And in the case of Lucas v. Goff, 33 Miss. 629, it was held, that owing to the facility with which frauds may be committed in setting up nuncupative wills, the law requires every one of the provisions to be strictly complied with. Hence, it is laid down that the testamentary capacity and the *animus testandi* at the time of the alleged nuncupation must appear, in the case of a nuncupative will, by the clearest and most indisputable evidence.

In the case at bar, the words which are sought to be established as a nuncupative will were drawn from the

deceased by an interrogatory put by one of his attending physicians. A nuncupative will procured in this way may be valid, but when so made, the court must be more upon its guard against importunity, more jealous of capacity, and more strict in requiring proof of spontaneity and volition than it would be in an ordinary case. Where a nuncupative will is drawn from the decedent by interrogatories, full and clear proof of spontaneity of the *animus testandi* is indispensable. Dorsey v. Shepherd, 12 Gill & Johns. 192.

It nowhere appears from the evidence that the deceased called upon any person present to take notice, or bear testimony that such was his will. To sustain this will, it must be shown that he used " words to that effect." His wish as to the disposition of his property was a mere answer to the interrogatory put to him by his physician, and is not equivalent to calling upon some person present to take notice, or bear testimony that such was his will. The deceased had not previously expressed any desire to make a will. His attention was first drawn to the subject by his physician, when he expressed a wish that certain persons should have his property. It may well be doubted whether the answer of the deceased furnishes that full and clear proof of the spontaneity of the *animus testandi*, which is deemed indispensable where a nuncupative will is drawn from the decedent by interrogatories. Be this, however, as it may, the natural effect of the absence of the *rogatio testium*, at the time of the nuncupation, is to diminish the force of the evidence relied on to establish the *animus testandi*. No word was spoken, no sign was made, no indication was manifested that the testator desired any one present to bear witness to his declared wish. If it be said that such must have been his desire from the nature of things, that is but conjecture at last, and the legislature has declared such conjecture shall not be sufficient.

If a case like this be sustained, the wise provisions of the statute, intended to prevent the setting up fictitious wills by fraud and perjury, would be rendered entirely nugatory, and such a construction would amount to a judicial repeal of the statute.

.For the reasons herein stated, the decree must be reversed.