JOHN T. MORGAN *et al.*

*v.*

DAVID R. STEVENS.

78  287
58a 140
78  287
75a 228

1. NUNCUPATIVE WILL. The provisions of a statute in regard to nuncupative wills must have a rigid and strict construction, and must be strictly enforced by courts.

2. SAME—*what the proof of, must show.* The testamentary capacity and the intention to make a will at the time of the alleged nuncupation must appear by the clearest and most indisputable testimony; and it must further appear, that the proof embodies the real testamentary intention of the deceased, in order to establish a nuncupative will.

3. SAME—*requirements of the statute.* It is essential to the establishing of a nuncupative will under the statute, that it shall be made in the last sickness of the testator, and that it shall be proved by two or more credible witnesses, who were present at the speaking and publishing thereof, who shall state, on oath, that they were present and heard the testator pronounce the words, and that they believe him to have been of sound mind and memory; and that he did, at the time, desire the persons present, or some of them, to bear witness that such was his will. And at least two witnesses must concur as to all these facts.

4. Where there were but two witnesses present at the time of the alleged speaking and publishing of a nuncupative will, and they both testified to all the facts required by the statute except the fact as to their being requested by the testatrix to bear witness that the words spoken were her will, upon which fact they differed, one saying that such request was made and the other that it was not: *Held,* that the requirements of the statute were not fulfilled, and the will was not established.

5. Where the proof showed that the testatrix, during her last sickness, said that she wanted her husband to have her property, and at the same time said that she wanted another person to have something, and that she would finish or fix it to-morrow, and she lived six days afterwards, and was all the time in a condition to make a will in writing, the words so spoken under such circumstances do not amount to such a declaration as should be admitted to probate as a nuncupative will.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JOHN PORTER, Messrs. DOUGLAS & HARVEY, and Mr. JOHN T. MORGAN, for the appellants.

Messrs. STEWART & PHELPS, and Mr. JOHN J. GLENN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

These proceedings originated in the county court of Warren county, wherein the nuncupative will of Angeline Stevens, deceased, was presented for probate. Probate thereof was refused, and an appeal taken to the circuit court.

In the circuit court an issue of fact was made up as to the execution of the will, which was found for the proponents of the will, the order of the county court reversed, and the cause remanded to that court, with directions.

To reverse this judgment, the contestants of the will appeal, and their assignment of error brings before us the whole merits of the controversy.

As we gather from text writers of acknowledged authority, and from the decisions of respectable courts, it is a cardinal principle that the provisions of the statute in regard to nun-

cupative wills must have a rigid and strict construction, and must be strictly enforced by courts. ' At this day, in England and in many of the States of our Union, the privilege of making such wills is restricted to soldiers in active military service, and to mariners at sea. It is said by Blackstone, in his Commentaries, by the Roman law a soldier's will traced in the sand by the point of his sword, done at the approach of battle, was a good disposition of his personalty. The reason given to sustain such a will, and, indeed, almost all nuncupative wills, is, that the testator, by being *in extremis,* had not time to make a more deliberate will or a written will. Chancellor KENT, in the great case of *Prince* v. *Hazleton,* 20 Johns. 502, said, it had become the acknowledged doctrine that a nuncupative will is only to be tolerated when made *in extremis.* It is the received doctrine, that the testamentary capacity and the *animus testandi,* at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony, and that the proof embodies the real testamentary intentions of the deceased.

Our statute upon the subject does not, in so many words, declare the nuncupation must be made whilst the testator is *in extremis,* but only that it shall be made in his last sickness; but it requires it shall be proved, by two or more credible witnesses, who were present at the speaking and publishing thereof, who shall declare, on oath or affirmation, that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory,. and that he or she did, at the time, desire the persons present,. or some of them, to bear witness that such was his or her will, or words to that effect.

The will, as presented for probate, is as follows : "I want David to have my property. He is the best friend I have got. He is poor, and needs it. My brothers have enough. I have property coming from my father, and I want David to have it. I want him to have the things, too, that are in our house. I want to give Kate something."

19—78TH ILL.

The affidavit in proof of this will is as follows : Personally appeared, in open court, Aaron Humphrey, M. D., and Sibyl Putnam, witnesses to the foregoing instrument of writing, purporting to be the last will and testament of Angeline Stevens, late of Warren county, deceased, who, being duly sworn, according to law, do depose and say, each for himself, that the foregoing is the last will and testament of the said Angeline Stevens, deceased ; that they were present at the speaking and publishing thereof; that they were present and heard the testatrix pronounce the said words ; that they believed her to be of sound mind and memory ; that she did, at the time, desire them to bear witness that such was her will, or used words to that effect ; (these words are then interlined, "telling us that if she died she wanted us to know that was her will,") and that said will was made in the time of the last sickness of the testatrix, the said Angeline Stevens ; that she died on the twenty-third day of March, A. D. 1872 ; and that the person of whom she was speaking, and whom she called David, was her husband, David Stevens ; and that said will was reduced to writing within less than twenty days from the speaking thereof.

Sibyl Putnam was the attending nurse of the deceased, and she states, the words composing the will were spoken by the deceased on Sunday night, the 17th of March, and that Dr. Humphrey was present. She further testified, the deceased said, at the same time, "she would fix it in the morning," and the same testimony is given by Dr. Humphrey. He states, he heard her speak about her property ; she said she wanted David to have it, but she wanted Katie to have something ; that she would finish it in the morning.

Dr. Humphrey, it appears, did sign the affidavit and affirm to it, under oath, in the county court, with the interlineation therein contained ; but, in the circuit court, he testified, positively, that the words interlined were not said in his hearing by the deceased ; that she said nothing about making a will; that she did not request either Miss Putnam or himself to

remember that they were witnesses to her will.· She did not use the word will in all the conversation.

Here, then, is a direct conflict between these witnesses, and they are the only witnesses on the point, testifying in the case.

We would infer from the testimony of Dr. Humphrey, that the deceased had not, at the time spoken of, any intention to make a testamentary disposition of her property. She was conning about it, and, as a sick person in her condition would be apt to say, she wanted her husband to have it, but could not have supposed she was then making her will, for in the conversation she said : "I want to give Kate something," adding, she would finish it to-morrow. It is impossible to hold, here was such a nuncupation as the statute contemplates. There was no *rogatio testium,* for that is positively denied by the attending physician. According to his testimony, neither he nor Miss Putnam, the only persons in the room, were called for any such purpose. That the deceased did not suppose she was making a disposition of her property, is manifest from the fact that she had Kate in her mind as an object of her solicitude, declaring that she must have something, and she would fix it or finish it in the morning.

The deceased lived six days after this alleged nuncupation, and was all the time in a condition to make a will in writing, and provide for her husband and Kate. There was nothing to prevent it, and no necessity or urgency is shown for making these alleged declarations.

We are satisfied the testimony is not of that clear character that should be required in proving wills of this kind, nor does it come up to the requirements of the statute, no two witnesses having testified to such facts as are required by the statute to be established, before such a will can take effect.

The jury found contrary to the law and the evidence, and the court, in rendering judgment on the verdict, erred.

The judgment must be reversed.

*Judgment reversed.*