MARTHA G. GEORGE ET AL. *v.* MARTHA GREER ET AL.

1. NUNCUPATIVE WILL. *Probate in six months.* § 2393, *Code* 1871.
   Under our statutes nuncupative wills shall not be primarily admitted to probate, without citation previously served on all the heirs at law resident in the State. It is this probate which must take place within six months, unless the words have been reduced to writing within six days of their utterance; and if this be not done, any subsequent establishment of the will is rendered impossible, by the provisions of § 2393, Code 1871.

2. SAME. *Testimony after six months.*
   If, after the primary probate of a nuncupative will, made in six months after the utterance of the words testamentary, citation having been previously served on all the heirs at law in the State, such heirs should raise a formal contest by *devisavit vel non*, testimony to establish such will would not be excluded on the trial of said issue, because six months had then elapsed since the speaking of the words claimed to be testamentary.

APPEAL from the Chancery Court of Noxubee County.

Hon. THOMAS CHRISTIAN, Chancellor.

The facts of this case appear in the opinion of the court.

*John Handy*, for the appellants.

1. There was error in the court below in permitting the witnesses to testify to establish the will. There is no claim that the alleged testamentary words were written down within six days after the speaking of the same. They were spoken on the twentieth day of January, 1873. It is not pretended that they ever were written down before the seventh day of February thereafter. Yet the court allowed testimony to go to the jury on a trial which took place on the 10th of September, 1873, in direct violation, as appears to me, of § 2393, Rev. Code 1871, which provides that, "after six months have elapsed from the time of speaking the pretended testamentary words, no testimony shall be received to prove a nuncupative will, unless such words, or the substance thereof, shall have been reduced to writing within six days after speaking the same."

2. There was not sufficient evidence of the *rogatio testium*, without which there can be no testamentary intent. *Andrews*

v. *Andrews*, 48 Miss. 220. " The *factum* of a nuncupative will requires to be proved by evidence more strict and stringent than that of a written one in every particular." The courts disfavor them, on account of the frauds and perjuries they tend to create. They will look at and scan with suspicious eyes all testimony adduced to support them.

3. There is in this case the absence of *rogatio testium*, by which alone the *animus testandi* can be manifested. The *rogatio testium* and the *animus testandi* must concur, and be proved by two witnesses. The testator must not only call upon the persons to notice, but he must declare " that such is his will, or words to that effect." He must declare it by words, not conduct. The matter must not rest partly in words and partly in conduct: it must rest entirely in words, and the words must be equivalent to " such is my will." No calling upon witnesses to take notice of what one is about to say, followed by bequests, is, in law, a declaration of his will.

*Foote & Foote*, for the appellees.

1. Under our statute, a nuncupative will may be established, if made in the time of the last sickness of the deceased, at his or her habitation, or where he or she hath resided for ten days next preceding the time of his or her death, when the amount exceeds one hundred dollars, and it be proved by two witnesses that the testator called on some person present to take notice or bear testimony that such is his or her will, or words to that effect. Rev. Code 1871, p. 527, § 2392. The probate of a nuncupative will is anomalous under our statute. The effect of the statute is to require it to be proved in form of law. *Kirby* v. *Kirby*, 40 Ala. 495. The will in the present case was propounded in open court, and four witnesses examined, who deposed to and signed the paper propounded as a will and filed. Such examination took place before the expiration of six months, and such examination at the time of propounding the will answers the requirements of the statute, according to its spirit and meaning.

2. As to the *animus testandi*, there can be no question. It is not required that the testator should call upon two witnesses to the fact that he is going to make a will, or two persons to witness, &c. It is only necessary that there be two witnesses

to the fact that he called on some one person present to take notice, or bear testimony, or words to that effect, that such was his will. *Parkison* v. *Parkison*, 12 S. & M. 672 ; *Gibson* v. *Gibson*, Walker (Miss.), 366. If there existed in the mind of the testator a fixed purpose to perform a testamentary act, and two persons felt themselves to be witnesses, that is sufficient. *Baker* v. *Dodson*, 4 Humph. 342, 344 ; *Gwin* v. *Wright*, 8 Humph. 639, 645 ; *Hatcher* v. *Millard*, 2 Coldw. 30, 33 ; *Smith* v. *Smith*, 63 N. C. 637 ; *Johnston* v. *Glasscock*, 2 Ala. 218 .

CHALMERS, J., delivered the opinion of the court.

Felix B. Greer died at his usual place of abode in Noxubee County, after having spoken, during his last illness, and about eighteen hours before his death, certain words, which it is claimed were of a testamentary character, and which, within less than six months but more than six days after his death, were reduced to writing, and, after citation to the heirs at law, were admitted to probate as a nuncupative last will and testament, in the chancery court of the county. This admission to probate was ordered upon the affidavits of four witnesses, setting forth all the essentials of a valid nuncupative will. By direction of the Chancellor, another citation was issued to and served upon the heirs at law, summoning them to appear at the next term of court, and show cause why the instrument should not be established as the last will and testament of the decedent. In obedience to this citation, a portion of the heirs appeared, and made answer denying the validity of the instrument, and tendering an issue of *devisavit vel non*. On the trial of this issue before a jury, the opponents of the will objected to the introduction of any testimony in support of it, because it appeared that the pretended testamentary words had not been reduced to writing within six days after the speaking thereof, and more than six months had intervened between the death of the decedent and the trial of the issue of *devisavit vel non*. It will be observed that the testamentary words were not reduced to writing within six days of the utterance thereof, but that within less than six months they were so reduced, and

the will was established in what may be called the common or unsolemn form, after citation served upon the heirs. More than six months had elapsed before the more formal contestation upon issue of *devisavit vel non* came on for trial.

It is enacted by Code of 1871, § 2393, that, " After six months have elapsed from the time of speaking the pretended testamentary words, no testimony shall be received to prove a nuncupative will, unless such words, or the substance thereof, shall have been reduced to writing within six days after speaking the same." These words, taken in their literal and broadest signification, may be construed to prohibit under all circumstances, any testimony in support of a nuncupative will, after the expiration of six months, unless the testamentary words have been reduced to writing within six days ; and this construction is earnestly insisted upon by counsel for the appellants. A moment's reflection will demonstrate its incorrectness. The statute with regard to nuncupative wills, unlike that in regard to written testaments, provides that they shall not be primarily admitted to probate without citation previously served upon all the heirs at law resident in the State. This safeguard is thrown around the probate in common form of nuncupative wills, for the protection of the heirs, and on account of the jealousy with which the law looks upon such testamentary dispositions of property by parol. It is this probate which must take place within six months, unless the words have been reduced to writing within six days of their utterance ; and if this be not done, any subsequent establishment of the will is rendered impossible, by the provision that thereafter no testimony shall be received in support of it.

But it could never have been intended that, if thereafter the heirs at law desired a formal contestation by issue of *devisavit vel non*, they could defeat the introduction of all testimony, by postponing such contest until the six months have expired. The case at bar strikingly illustrates the injustice of such a construction. The heirs were all cited to appear and contest the primary probate. They declined to do so, and the instrument was regularly admitted to probate. The Chancellor then,

of his own motion, directed fresh citation to issue to them, to which they responded, and, upon a contest tendered by themselves, objected to the introduction of any testimony. There is no law which required the issuance of the second citation; but, inasmuch as they appeared and pleaded to it, this is immaterial. They might have made the contest at any time within two years (Code of 1871, § 1099); but surely, if they had delayed so long, they could not then have objected to the introduction of testimony by the propounders of the will because six months had elapsed since the speaking of the words. Such a construction would place the beneficiaries under the will completely at the mercy of the heirs at law, and be equivalent to a declaration that no nuncupative will should be established, except by the consent of the heirs, unless the testamentary words were reduced to writing within six days after utterance. The law is not so written. *Johnston* v. *Glasscock*, 2 Ala. 218.

It is objected that there was no sufficient proof of the *animus testandi* upon the part of the alleged testator, or of the *rogatio testium* by him. There can be no doubt of the *animus testandi*. The dying man called for pen, ink and paper, for the purpose of making a will. It was brought, and he commenced to dictate his wishes. He was presently assured by the party who was writing at his dictation that he could make a valid verbal will. He replied, "well," and continued to make disposition of his property.

The *rogatio testium*, we think, is equally well established. One witness testifies that the decedent said, "You all take notice of what I say, or am about to say. . . . He did not speak to any particular person." . . . "After he told the parties present to take notice, in a few minutes he began to make dispositions of his property." Another witness says, "I am pretty certain that Mr. Greer, before making his will, called upon those present to take notice of what he would say. He asked those present to bear witness to what he should say in disposing of his property." A third witness testifies as follows: "I suggested making a verbal will. He said, 'well,' and turned to the crowd, and said that he wanted all to remember that he and his brother John were equal partners,

and then went on to say what disposition he wished made of his property."

The testimony of these witnesses fully meets the requirements of the law, as laid down in *Andrews* v. *Andrews*, 48 Miss. 220, and elsewhere.

*The decree establishing the will is affirmed.*

CAMPBELL, J., having been consulted while at the bar, takes no part in this decision.