## In the Matter of the Estate of Louis Grossman, Deceased.

1. WILLS—*Provisions of the Statute in Regard to Nuncupative Wills Strictly Construed and Enforced.*—The provisions of the statute in regard to nuncupative wills must have a rigid and strict construction, and must be strictly enforced by the courts.

2. SAME—*Witnessing Nuncupative Wills.*—It is not essential to the validity of a nuncupative will that the testator should use the exact words of the statute in requesting persons present "to bear witness that such was his will." It is sufficient if such desire is clearly and unequivocally manifested by the testator, but it is indispensable that the testator should expressly desire those present to bear witness that such was his last will, or should say or do something equivalent to an express request.

3. SAME—*Proper Execution of Will a Question of Law.*—Whether a

will is or is not executed with the proper formalities, is a question of law, not of fact.

**Petition,** requesting the probate of a will. Appeal from the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1897. Affirmed. Opinion filed April 8, 1898.

Flower, Smith & Musgrave, attorneys for appellant.

At the making of a nuncupative will it is not necessary that the testator should in express words request the persons present to witness the will. Any form of expression, how-ever imperfectly uttered, so that it conveys to the minds of those to whom it is addressed the idea that he desires them, or some of them, to bear witness to the disposition he is making of his property, will be deemed a compliance with the statute; and herein it will be noticed that our statute (Hurd's, 1895, Chap. 148, Sec. 15, page 1580) reads : " And that he or she did at the same time desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect." Weir v. Chidester, 63 Ill. 453; Bradford v. Clower, 60 Ill. App. 55; Harrington v. Stees, 82 Ill. 50; Baker v. Dodson, 40 Am. Dec. 650; Mulligan v. Leonard, 46 Ia. 692; Gwin v. Wright, 8 Hump. (Tenn.) 639; Parsons v. Parsons, 2 Greenleaf (Me.), 298; Deane v. Littlefield, 1 Pick. 239; Hare v. Bryant, Ky. Dec. 270; Parkison v. Parkison, 12 S. & M. (Miss.) 672; Portwood v. Hunter, 6 B. Monroe (Ky.) 538.

Wilson, Moore & McIlvaine, attorneys for appellees, Frederick Grossman and William Grossman.

" It is the received doctrine that the testamentary capacity and the *animus testandi*, at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony, and that the proof embodies the real testamentary intentions of the deceased." Morgan v. Stevens, 78 Ill. 287; Crean v. Hourigan, 58 Ill. App. 137.

" The provisions of the statute in regard to nuncupative wills have been strictly enforced by the courts, and they

have generally adopted a rigid and strict construction in regard to them. It must appear that all the requirements of the law have been complied with. Independent of the statute of frauds the *factum* of a nuncupative will requires to be proved by more strict evidence than a written one. The testamentary capacity, or *animus testandi*, and the *rogatio testium* at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony. * * * In all cases in our books of reports in which nuncupative wills have been sustained, the testator unmistakably indicated his purpose of performing a testamentary act." Smith v. Thurman, 2 Heisk. (Tenn.) 110.

ADOLPH D. WEINER, attorney for appellee M. T. Grossman; ROSENTHAL, KURZ & HIRSCHL, of counsel.

MR. JUSTICE HORTON DELIVERED THE OPINION OF THE COURT.

The question in this case is whether a certain document presented in the Probate Court of Cook County, June 22, 1894, is or is not the nuncupative will of Louis Grossman, deceased. Probate of such document as such a will was denied by the Probate Court, and the matter was taken to the Circuit Court of Cook County by appeal. The testimony taken in the Probate Court was reduced to writing, and by stipulation was the testimony upon which the case was heard in the Circuit Court. After the testimony had been read to the jury, the court, at the instance of the opponents, instructed the jury to return a verdict finding that said document is not the nuncupative will of said Louis Grossman. Such verdict was returned by the jury. Emma Bricher, proponent of said alleged will and the principal beneficiary thereunder, brought the case to this court by appeal.

The proposed will offered in evidence is as follows:

"Be it remembered that heretofore, on or about the eleventh day of June, A. D. 1894, the undersigned, Frederick Grossman, of 5623 Dearborn street, Chicago, Dr. A. M. Harvey, of St. Elizabeth's Hospital, corner of Davis and Le Moyne streets, Chicago, Illinois, and William E. Burcky, of

6641 South Halsted street, Chicago, Illinois, were present at said St. Elizabeth Hospital at the bedside of Louis Grossman, since deceased, a brother of the said Frederick Grossman; a consultation of physicians had just been held and it had been decided that an operation should be performed upon the said Louis Grossman, as the only chance of saving his life. After the consultation the undersigned, together with Frederick A. Grossman, were left alone with said deceased. Thereupon the undersigned Frederick Grossman stated to said deceased that an operation was the only means of saving his life, and that the time of the operation had been fixed for three o'clock on the afternoon of Monday, June 11th; said Frederick Grossman further asked said deceased whether in view of the uncertainty of the result of said operation he, Louis Grossman, wished to make any settlement of his matters. Louis Grossman said that he did. Thereupon Frederick Grossman secured pencil and paper. Louis Grossman then said:

" ' I give the three lots in Englewood on Wentworth avenue to Sylvia, the wife of the doctor there (pointing to Dr. Burcky).

" ' I give to Freddie, the young doctor there (pointing to Frederick A. Grossman), the property on North avenue where the barn and coal yard are, numbered 718 and 720 West North avenue.

" ' I give to Emma Bricher all the money I have in notes and mortgages bearing interest (or as Dr. Harvey remembered it, all money, including notes and mortgages); you will find the papers at the bank (Foreman's Bank); but Emma Bricher is to give one thousand dollars out of these notes and mortgages to John Gross' oldest daughter by his first wife. I want all my bills, including hospital bills, doctor's bills and funeral expenses, and all incumbrances on my property (Dr. Harvey does not remember this last item) to be paid by Emma Bricher out of the property given to her.

" ' Anything else I have I give to Andrew, your little boy (indicating Frederick Grossman).

" ' I want to be buried on mother's lot in Oakwood Cemetery.'

" Mr. Frederick Grossman and Dr. Burcky remember that the testator said that Frederick Grossman was to take care of the property of the boy Andrew, without any expense or trouble.

" That said Louis Grossman said that was all. He died about ten o'clock on the forenoon of Monday, June 11th.

" In testimony of the above we have set our hands hereto this 19th day of June, A. D. 1894.

(Signed)    FREDERICK GROSSMAN.

(Signed)    WILLIAM E. BURCKY.

(Signed)    ANDREW M. HARVEY.

" The foregoing was read to Frederick Grossman, William E. Burcky and A. M. Harvey in our presence, and was subscribed by them in our presence.

(Signed)    F. E. PRESTLEY, M. D.

St. Elizabeth Hosp.

(Signed)    W. R. LIVINGSTON, M. D.

269 La Salle Avenue.

(Signed)    WM. B. MCILVAINE,

502 N. State St.

(Signed)    H. C. ADCOCK.

4459 Evans Ave."

There is no question but that this alleged will was reduced to writing within the time required by the statute, in the form necessary. The main question is, have two witnesses testified to the statutory requirements?

"It is a cardinal principle that the provisions of the statute must have a rigid and strict construction, and must be strictly enforced by courts," and that there must be the concurring testimony of at least two witnesses. Morgan v. Stevens, 78 Ill. 287.

It is not necessary that a testator should use the exact words of the statute in requesting persons present " to bear witness that such was his will." It is sufficient if such desire is clearly and unequivocally manifested by the testator. Harrington v. Stees, 82 Ill. 50.

But it is indispensable to the validity of a nuncupative will that the testator should expressly desire those present to bear witness that such was his last will, or should say or do something equivalent to an express request. Arnett v. Arnett, 27 Ill. 247.

Does it clearly appear in the case at bar by the testimony of at least two witnesses, that such a desire was expressed by Louis Grossman?

Section 2 of Chapter 145 of the Revised Statutes provides that "all wills, testaments and codicils, by which any lands, tenements, hereditaments, annuities, rents or goods and chattels are devised, shall be reduced to writing and signed by the testator, etc."

Oral wills, however, are excepted from the operation of this section of the statute by section 15 of the act, which provides as follows: "A nuncupative will shall be good and available in law for the conveyance of personal property thereby bequeathed, if committed to writing within twenty days after the making thereof, and proven before the County Court by two or more credible disinterested witnesses, who were present at the speaking and publishing thereof, who shall declare on oath or affirmation that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory; and that he or she did at the same time desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect; and that such will was made in the time of the last sickness of the testator or testatrix," etc.

It is of course conceded that the alleged will in question can not be operative as to real estate.

"Whether a will is or is not executed with the proper formalities, is a question of law, not of fact." Roe v. Taylor, 45 Ill. 491; Graybeal v. Gardner, 146 Ill. 346.

It will be noticed that it does not appear by said alleged will that the testator desired the persons present to witness his will. There is no reference whatever in that document to the question of witnesses or the witnessing of his will

made by or in the presence of the testator. The three persons, who signed that paper writing as having been witnesses to the making of said alleged will, were examined in court as witnesses. Neither one of them swears that the testator expressed any desire in any manner that they or either of them should bear witness to his will. On the contrary, they all swear definitely that he did not.

The only reference to the question of witnessing the will appearing in the testimony of either of the persons present when the nuncupative will is alleged to have been made, is by Dr. Harvey. His testimony as to that is as follows:

"Mr. Frederick Grossman said 'You are a witness,' but Mr. Louis Grossman never mentioned the word witness at all."

"Q. But Mr. Frederick Grossman did say 'You are a witness?'" "A. He says 'You are a witness,' or words to that effect. I don't know whether those were the exact words or not, but I was led to understand that that was the will and I was a witness to it."

This the brother Frederick positively denies. Dr. Burcky and Frederick Grossman, the two other witnesses, both swear that the deceased said nothing whatever about witnesses or anything like that, and in no manner indicated a desire to have those present, or any of them, witness his will. This is fatal to the alleged will. The provisions of the statute in regard to witnessing a nuncupative will have not been complied with. The action of the trial court in instructing the jury to return a verdict against the validity of this alleged will must be sustained.

At the interview when it is claimed the nuncupative will was made, the deceased stated how he desired to have his property, both real and personal, distributed. A memorandum was made at the time by the brother Frederick. This was about midnight June 10–11, 1894. It had been determined that a surgical operation upon deceased was necessary, and that it should be performed at 3 P. M. the 11th. Deceased was advised of the fact. The physicians said that he would be competent to make a will at any time

before the operation was to be performed.   From the testimony in this case it seems to be clearly established that what was intended to be done was to have a formal will prepared, and to have the same executed before the surgical operation was commenced.   Frederick in fact prepared a draft of a written will.   But the deceased died at ten o'clock that morning, and this unexpected result probably prevented the execution of such a will.   That the deceased intended to make a will substantially as provided by the proposed nuncupative will, can hardly be questioned. Whether he would have given the personal property as therein provided, independent of the devises of the real estate, may be doubted.   But whatever may have been his intentions, he in fact made no will that can be sustained in law.

It is unnecessary to consider the other objections made to the validity of the alleged nuncupative will in question.

The judgment of the Circuit Court is affirmed.